**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| **TD BANK, N.A. and TD PRIVATE CLIENT WEALTH, LLC,** | Civil Action No.: |
| Plaintiffs, | |
| v. | |
| **BRETT BARTKIEWICZ, GREGG DESMARAIS, RAYMOND JAMES FINANCIAL SERVICES, INC., AND CRESCENT LAKE CAPITAL, LLC D/B/A CRESCENT POINT PRIVATE WEALTH,** | May 16, 2024 |
| Defendants. | |

**VERIFIED COMPLAINT**

Plaintiffs TD Bank, N.A. ("TD Bank") and TD Private Client Wealth, LLC ("TDPCW") (collectively referred to as "Plaintiffs") file this Verified Complaint against Defendants Brett Bartkiewicz ("Bartkiewicz"), Gregg Desmarais ("Desmarais"), Raymond James Financial Services, Inc. ("RJF"), and Crescent Lake Capital, LLC d/b/a Crescent Point Private Wealth ("CLP") (collectively the "Defendants"). In support of this Verified Complaint, Plaintiffs state as follows:

**NATURE OF THE CASE**

1.     This is an action for breach of contract, tortious interference with customers, tortious interference with contract, aiding and abetting, and violations of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a, *et seq.*

2.     TD Bank is a national banking organization which provides, among other banking products, wealth management services, to customers nationwide. TD Bank maintains approximately 1,150 branches across the East Coast, serving customers in the states of

Connecticut, Delaware, Florida, Maine, Maryland, Massachusetts, New Hampshire, New Jersey, New York, North Carolina, Pennsylvania, Rhode Island, South Carolina, Vermont, Virginia, and the District of Columbia. In Connecticut, TD Bank maintains approximately 55 branches.

3.      TDPCW provides investment management services to clients and is a registered broker-dealer.  TDPCW is a wholly-owned subsidiary of TD Bank.

4.      From on or about March 30, 2016, until April 25, 2024, Bartkiewicz was employed by TD Bank, with his most recent role as a Private Client Investment Advisor with TD Bank.

5.      From March 3, 2011, until April 25, 2024, Desmarais was employed by TD Bank, with his most recent role as a Private Client Relationship Manager II.

6.      As conditions of their employment, both Bartkiewicz and Desmarais coveted not to solicit TD Bank clients upon termination of their employment.

7.      On April 25, 2024 both Bartkiewicz and Desmarais abruptly resigned from their positions and terminated their registrations with TD Bank, effective immediately.

8.      Shortly thereafter, more than $25,000,000 in client assets left TD Bank and were relocated to RJF.

9.      TD Bank subsequently learned that Bartkiewicz and Desmarais were indeed soliciting clients from TD Bank and had offered significant fee discounts to entice the clients from TD Bank to RJF.

10.      On May 7, 2024, counsel for TD Bank sent cease and desist letters to counsel of record for Bartkiewicz, Desmarais, RFJ and CLP.

11.      Defendants' conduct has, and will continue to, irreparably harm TD Bank.

**PARTIES**

12.    TD Bank is a national banking association organized under the laws of the United States with its main office at 2035 Limestone Road, Wilmington, Delaware 19808.  TD Bank is, and at all times mentioned was, authorized to do business in the State of Connecticut.

13.    Bartkiewicz is a natural person and resident of the State of Connecticut.

14.    Desmarais is a natural person and resident of the State of Massachusetts.

15.    RJF is corporation organized under the laws of the State of Florida with a principal place of business in Florida.

16.    CLP is a limited liability company organized under the laws of the State of Connecticut with a principal place of business in Connecticut.

**JURISDICTION AND VENUE**

17.    This Court has original jurisdiction over this action under the provisions of 28 U.S.C. § 1332, in that the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interests and costs, and is between citizens of different states for diversity purposes.

18.    The Court has personal jurisdiction over Bartkiewicz because he is a citizen of the State of Connecticut.

19.    The Court has personal jurisdiction over Desmarais because he is a citizen of the State of Massachusetts.

20.    The Court has personal jurisdiction over RJF because it does business and is registered to do business in Connecticut and because Plaintiffs' action arises out of RJF's transaction of business in Connecticut and its causing of tortious injury in Connecticut.

21.    The Court has personal jurisdiction over CLP because it does business and is registered to do business in Connecticut and because Plaintiffs' action arises out of CLP's

transaction of business in Connecticut and its causing of tortious injury in Connecticut.

22.    Venue is proper in this district under 28 U.S.C. § 1400(a) because Defendants and their agents may be found in this district.

23.    Venue is also proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district, and under 28 U.S.C. § 1391(b)(3), because Defendants are subject to personal jurisdiction in this district regarding this action.

## ALLEGATIONS

**The Business of TD Bank**

24.    TD Bank offers a broad array of retail, small business and commercial banking products and services to customers through convenient locations, including locations in Connecticut.

25.    In addition to banking products, TD Bank offers customized wealth management services through TDPCW and TD Bank (TD Wealth Division) business segments.  TDPCW and TD Bank (TD Wealth Division) takes a personal approach to building a customer's wealth and legacy, starting with getting to know the customer, the customer's lifestyle, and the important people and activities in the customer's life - family, career and personal goals and interest. Consequently, TDPCW and TD Bank (TD Wealth Division) relationship managers and investment advisors actively consult with, get to know, and develop close relationships with customers to develop and implement a fully integrated wealth management plan tailored exclusively for clients they work with through TDPCW and TD Bank.

**Bartkiewicz' and Desmarais' Employment With TD Bank**

26.    As a condition of Bartkiewicz' employment with TD Bank as a Private Client Investment Advisor, Bartkiewicz was subject to a TD Wealth Management US Wealth Investment

4

Advisor Incentive Plain (the "Investment Advisors Agreement").

27.    Bartkiewicz agreed in the Investment Advisors Agreement that he would maintain the confidentiality of, and refrain from misappropriating or using TD Bank's Confidential and Proprietary Information.

28.    Specifically, per the Investment Advisors Agreement, Bartkiewicz coveted:

> To maintain and ensure the strictest confidentiality of all Confidential and Proprietary Information [as defined in the Investment Advisors Agreement] at all times during and after [his] employment with TD Bank and not to, directly or indirectly, at any time during or after [his] employment with TD Bank disclose, divulge or reveal to any individual or entity, or to retain or use for the Plain Participant's own and or another person's or entity's gain or benefit, any Confidential and Proprietary Information or any other information or material that is confidential or proprietary to TD Bank . . ..

> [He] shall at no time copy or remove from TD Bank premises or retain, without TD Bank's prior written consent, any Confidential or Proprietary Information, including but not limited to, TD Bank's unpublished records, agreements, accounts, corporate documents, work papers, correspondence, customer information, memoranda or copies or extracts of any of the foregoing, except as required in the normal operations of TD Bank business.

29.    The Investment Advisors Agreement defines Confidential and Proprietary Information to include:

> trade secrets; clients, customer, consumer and/or borrower names, addresses, contact information, personal identifying information, lists, financial holdings, accounts and account numbers, transactions, preferences, tax documents and other information ("customer information"); pricing, rate, billing and product information, policies and procedures; prospect lists, identities and information; marketing plans, proposals or strategies; promotional plans, proposals or strategies; financial records, data and information; financial formulas and models; profit margins and costs of products and services; specialized business methods and techniques; know-how, processes, ideas, inventions, discoveries, patent applications, concepts, and other non-public intellectual property; contracts and contractual forms; policy, procedure and

training manuals; compliance information; business plans; product development information (or other proprietary product data); software programs; TD's Bank's personnel information; information that is entrusted to TD Bank in confidence by third parties with whom TD Bank does business or is negotiating to do business; records containing Confidential and Proprietary Information; material expressly designated by TD Bank to be either proprietary or confidential; information deemed confidential under applicable law; and all other non-public, proprietary, or confidential information of, concerning, provided by or on behalf of, or which relates to, TD Bank or its parents, subsidiaries, affiliates, licensees, licensors, joint ventures, clients, employees, or any other person or entity with whom or which TD Bank transacts or transacted business, including, without limitation, any technical, economic, financial, marketing, or other information, which is not available generally to the public or commonly known among competitors or other companies which may like to possess such Confidential and Proprietary Information or may find it useful . . ..

30.     In addition to these obligations, Bartkiewicz coveted in the Investment Advisors Agreement that he would not, for a period of twelve (12) months after his termination of his employment with TD Bank:

(i) contact, call upon or solicit, or attempt to contact, call upon or solicit, any client, customer or account, for the purpose of inducing or causing that client, customer or account to cease doing business or to restrict, limit, reduce or modify its relationship with TD Bank or any of its subsidiaries, affiliates or divisions, or for the purpose of selling, providing or offering to any such client, customer or account any products, services, programs and/or systems offered, sold or provided by (or that compete with the products, services, programs and/or systems offered, sold or provided by) TD Bank or any of its subsidiaries, affiliates or divisions with which the Plan Participant was involved during the Look Back Period, (ii) entice, divert or take away, or attempt to divert, or take away from TD Bank or any of its subsidiaries, affiliates or divisions, any client, customer or account of TD Bank, (iii) encourage any client, customer or account, or supplier or prospective supplier, of TD Bank not to enter into a business relationship with TD Bank or any of its subsidiaries, affiliates or divisions, (iv) impair or attempt to impair any relationship, contractual or otherwise, written or oral, between TD Bank or any of its subsidiaries, affiliates or divisions and any client, customer or account, supplier or other business relationship, or (iii) accept business from, conduct business with or consult with, or sell,

provide or offer products, services, programs and or systems to, any client, customer or account, or attempt to do the same, if such business, products, services, programs and/or systems are competitive with the business, products, services, programs and/or systems offered, sold or provided by TD Bank or any of its subsidiaries, affiliates or divisions with which the [he] was involved during the Look Back Period. For purposes of clarification, [Bartkiewicz] acknowledges and agrees that the prohibitions in this subparagraph on contacting, calling upon or soliciting, or attempting to contact, call upon or solicit, shall apply regardless of which party first initiated contact and regardless of whether a client, customer or account first sought out [Bartkiewicz] for purposes of conducting business with or through [Bartkiewicz]. The parties intend, through the prohibitions set forth in this subparagraph, that [Bartkiewicz] shall not solicit the business of, accept business from, or do business with, any client, customer or account regardless of which party first initiated contact.

31.    Bartkiewicz further coveted in the Investment Advisors Agreement that he would not, for a period of twelve (12) months after the termination of his employment with TD Bank:

(i) maliciously or willfully interfere or attempt to interfere with, or maliciously or willfully hinder, or use any Confidential and Proprietary Information to interfere or attempt to interfere with or hinder, the relationship of TD Bank, or any of its subsidiaries, affiliates or divisions, with any client, customer or account, or a business partner, referral source, supplier or vendor, of TD Bank during the Look Back Period, or (ii) solicit, persuade, induce, encourage, entice or recruit or entice any client, customer or account, to terminate or otherwise restrict, limit, reduce or modify its or their contractual or other relationship or business dealings with TD Bank or any of its officers, directors, Employees, or agents.

32.    Bartkiewicz also specifically agreed in the Investment Advisors agreement that these post-employment restrictions are reasonable and necessary to protect TD's legitimate business interests.

33.    Additionally, Bartkiewicz acknowledged and agreed that any breach by him of these post-employment restrictions would result in immediate and irreparable harm to TD Bank and would entitle TD Bank to injunctive relief, including temporary, preliminary, and permanent

injunctive relief, as well as damages and attorneys' fees and costs incurred by TD Bank in addressing any such breach.

34.    As a condition of Desmarais' employment with TD Bank as a Private Client Relationship Manager II, Desmarais was subject to a TD Wealth Management US Wealth Relationship Manager Incentive Plain (the "Relationship Managers Agreement").

35.    Desmarais agreed in the Relationship Managers Agreement that he would maintain the confidentiality of, and refrain from misappropriating or using TD Bank's Confidential and Proprietary Information.

36.    Specifically, per the Relationship Managers Agreement, Desmarais coveted:

> to maintain and ensure the strictest confidentiality of all Confidential and Proprietary Information at all times during and after their employment with TD Bank and not to, directly or indirectly, at any time during or after their employment with TD Bank disclose, divulge or reveal to any individual or entity, or permit any other person to disclose, divulge or reveal to any individual or entity, or retain or use for the Plan Participant's own or another person's or entity's gain or benefit, any Confidential and Proprietary Information or any other information or material that is confidential or proprietary to TD Bank . . ..

> [He] shall at no time copy or remove from TD Bank premises or retain, without TD Bank's prior written consent, any Confidential or Proprietary Information, including, but not limited to, TD Bank's unpublished records, agreements, accounts, corporate documents, work papers, correspondence, customer information, memoranda or copies or extracts of any of the foregoing, except as required in the normal operations of TD Bank business.

37.    The Relationship Managers agreement defines Confidential and Proprietary Information to include:

> trade secrets; client, customer, consumer and/or borrower names, addresses, contact information, personal identifying information, lists, financial holdings, accounts and account numbers, transactions, preferences, tax documents and other information ("customer information"); pricing, rate, billing and product

information, policies and procedures; prospect lists, identities and information; marketing plans, proposals or strategies; promotional plans, proposals or strategies; financial records, data and information; financial formulas and models; profit margins and costs of products and services; specialized business methods and techniques; know-how, processes, ideas, inventions, discoveries, patent applications, concepts, and other non-public intellectual property; contracts and contractual forms; policy, procedure and training manuals; compliance information; business plans; product development information (or other proprietary product data); software programs; TD's Bank's personnel information; information that is entrusted to TD Bank in confidence by third parties with whom TD Bank does business or is negotiating to do business; records containing Confidential and Proprietary Information; material expressly designated by TD Bank to be either proprietary or confidential; information deemed confidential under applicable law; and all other non-public, proprietary, or confidential information of, concerning, provided by or on behalf of, or which relates to, TD Bank or its parents, subsidiaries, affiliates, licensees, licensors, joint ventures, clients, employees, or any other person or entity with whom or which TD Bank transacts or transacted business, including, without limitation, any technical, economic, financial, marketing, or other information, which is not available generally to the public or commonly known among competitors or other companies which may like to possess such Confidential and Proprietary Information or may find it useful . . ..

38.    In addition to these obligations, Desmarais coveted in the Relationship Managers agreement that he would not, for a period of twelve (12) months after the termination of his employment with TD:

(i) contact, call upon or solicit, or attempt to contact, call upon or solicit, any client, customer or account, for the purpose of inducing or causing that client, customer or account to cease doing business or to restrict, limit, reduce or modify its relationship with TD Bank or any of its subsidiaries, affiliates or divisions, or for the purpose of selling, providing or offering to any such client, customer or account any products, services, programs and/or systems offered, sold or provided by (or that compete with the products, services, programs and/or systems offered, sold or provided by) TD Bank or any of its subsidiaries, affiliates or divisions with which the Plan Participant was involved during the Look Back Period, (ii) entice, divert or take away, or attempt to divert, or take away from TD Bank or any of its subsidiaries, affiliates or divisions, any client, customer

or account of TD Bank, (iii) encourage any client, customer or account, or supplier or prospective supplier, of TD Bank not to enter into a business relationship with TD Bank or any of its subsidiaries, affiliates or divisions, (iv) impair or attempt to impair any relationship, contractual or otherwise, written or oral, between TD Bank or any of its subsidiaries, affiliates or divisions and any client, customer or account, supplier or other business relationship, or (iii) accept business from, conduct business with or consult with, or sell, provide or offer products, services, programs and or systems to, any client, customer or account, or attempt to do the same, if such business, products, services, programs and/or systems are competitive with the business, products, services, programs and/or systems offered, sold or provided by TD Bank or any of its subsidiaries, affiliates or divisions with which [Desmarais] was involved during the Look Back Period. For purposes of clarification, [Desmarais] acknowledges and agrees that the prohibitions in this subparagraph on contacting, calling upon or soliciting, or attempting to contact, call upon or solicit, shall apply regardless of which party first initiated contact and regardless of whether a client, customer or account first sought out [Desmarais] for purposes of conducting business with or through [Desmarais]. The parties intend, through the prohibitions set forth in this subparagraph, that the [Desmarais] shall not solicit the business of, accept business from, or do business with, any client, customer or account regardless of which party first initiated contact.

39.     Additionally, Desmarais coveted in the Relationship Managers Agreement that he would not, for a period of twelve (12) months after the termination of his employment with TD Bank:

(i) maliciously or willfully interfere or attempt to interfere with, or maliciously or willfully hinder, or use any Confidential and Proprietary Information to interfere or attempt to interfere with or hinder, the relationship of TD Bank, or any of its subsidiaries, affiliates or divisions, with any client, customer or account, or a business partner, referral source, supplier or vendor, of TD Bank during the Look Back Period, or (ii) solicit, persuade, induce, encourage, entice or recruit or entice any client, customer or account, to terminate or otherwise restrict, limit, reduce or modify its or their contractual or other relationship or business dealings with TD Bank or any of its officers, directors, Employees, or agents.

40.     Desmarais also specifically agreed in the Relationship Managers agreement that

these post-employment restrictions are reasonable and necessary to protect TD Bank's legitimate business interests.

41.    In addition, Mr. Desmarais acknowledged and agreed that any breach by him of these post-employment restrictions would result in immediate and irreparable harm to TD Bank and would entitle TD Bank to injunctive relief, including temporary, preliminary, and permanent injunctive relief, as well as damages and attorneys' fees and costs incurred by TD Bank in addressing any such breach.

42.    Moreover, like all employees of TD Bank, in addition to their respective obligations under the Investment Advisors Agreement and Relationship Managers Agreement, Bartkiewicz and Desmarais, received and acknowledged TD Bank's Code of Conduct and Ethics and Employee Handbook. The requirements of these documents prohibit them both from disclosing TD Bank's confidential and proprietary information to persons outside of TD Bank or its affiliates, or using such confidential and proprietary information for their own or another person's or entity's personal gain or benefit. These obligations to TD Bank continue after termination of employment.

**Bartkiewicz' and Desmarais' Resignation and Subsequent Solicitation**

43.    On April 25, 2024 both Bartkiewicz and Desmarais abruptly resigned from their positions and terminated their registrations with TD Bank, effective immediately.

44.    After their abrupt resignations, both Bartkiewicz and Desmarais joined RJF as partners with Crescent Point Private Wealth as family wealth advisors.

45.    Since their resignation from TD Bank and subsequent employ with RJF, TD Bank received information indicating that Bartkiewicz and Desmarais have contacted customers of TD Bank directly and offered them significant fee discounts or product deals if they moved their business from TD Bank to RJF.

46.     In their positions as Private Client Investment Advisor and Relationship Manager both men were intimately familiar with TD Bank's fee structure, including the fees that were charged to specific customers.

47.     Specifically, within seven (7) days of Bartkiewicz' and Desmarais' separation, TD Bank lost at least ten accounts totaling $22,122.337.81 in value.

48.     Following the departure of over $22 Million Dollars in accounts, TD Bank reviewed available data to determine if the departure could be related to Bartkiewicz and Desmarais.

49.     Upon information and belief, Bartkiewicz and/or Desmarais solicited at least twelve (12) TD Bank clients following their resignation.

50.     In addition to merely soliciting twelve accounts, upon information and belief Bartkiewicz and Desmarais brazenly offered a number of individuals significantly reduced rates to attract them to RJF. Upon information and belief, one such reduction was a at least 15% reduction.

51.     Such contacts directly violate both Bartkiewicz' and Desmarais' non-solicitation clauses which prohibit, for a period of twelve months, each individual from contacting, calling upon or soliciting, or attempting to contact, calling upon or solicit, any client, customer or account, for the purpose of inducing or causing that client, customer or account to cease doing business or to restrict, limit, reduce or modify its relationship with TD Bank.

**COUNT ONE: BREACH OF CONTRACT (BARTKIEWICZ)**

52.     Plaintiffs repeat and re-allege each and every allegation stated in the preceding paragraphs of the Complaint as if set forth fully herein.

53.     Throughout Bartkiewicz' employment with TD Bank, incentive compensation

plans were developed for certain bank employees including Bartkiewicz. In exchange for his participation in and eligibility to earn awards under the TD Wealth Management US Private Client Group Incentive Plans ("Investment Advisor Agreements"), Bartkiewicz agreed to certain post-employment obligations including, but not limited to, restrictions on soliciting TD Bank's customers, accepting business from its customers, and using TD Bank's confidential and proprietary information.

54.    Defendant's Investment Advisors Agreement is a valid contract supported by adequate consideration, and Plaintiffs have the authority to enforce same.

55.    Plaintiffs have performed their obligations under the Investment Advisors Agreement in that it paid Bartkiewicz his compensation in accordance with the agreement for his employment with Plaintiffs.

56.    Bartkiewicz breached the Investment Advisors Agreement by, upon information and belief, soliciting clients of TD Bank in an effort to obtain their business with Bartkiewicz for RJF.

57.    In so doing, Bartkiewicz contacted TD Bank's clients within the 12-month period of which he was prohibited to do so, with the specific purpose of inducing or causing that client, customer or account to cease doing business or to restrict, limit, reduce or modify its relationship with TD Bank or any of its subsidiaries, affiliates or divisions, or for the purpose of selling, providing or offering to any such client, customer or account any products, services, programs and/or systems offered, sold or provided by (or that compete with the products, services, programs and/or systems offered, sold or provided by) TD Bank or any of its subsidiaries, affiliates or divisions with which the Plan Participant was involved during the Look Back Period.

58.    By virtue of the foregoing, Bartkiewicz violated the Investment Advisors

Agreement.

59.    The Investment Advisors Agreement is enforceable under Connecticut law.

60.    The restrictive covenants contained in the Investment Advisors Agreement are necessary and tailored to protect TD Bank's investment in Bartkiewicz, as well as protect TD Bank's legitimate business interests, including but not limited to goodwill, clients, and confidential and proprietary and business information.

61.    The Investment Advisors Agreement is narrowly tailored to 12 months.

62.    Upon information and belief, Bartkiewicz' breaches of these covenants continue to this day and will continue unless he is ordered to abide by the obligations to which he agreed when he accepted the Investment Advisors Agreement.

63.    As a result of Bartkiewicz' conduct, TD Bank has suffered, and continues to suffer, damages in the form of lost accounts and fees associated with the administration of same.

64.    As a result of Bartkiewicz' conduct, TD Bank has been forced to expend attorneys' fees to its detriment.

65.    The harm that TD Bank will suffer, and will continue to suffer, if Bartkiewicz is permitted to continue soliciting TD Bank clients while employed with RJF, will result in competitive disadvantage to TD Bank in the hands of Bartkiewicz.

66.    In addition, as a consequence of Bartkiewicz' breaches of the Investment Advisors Agreement, TD Bank seeks actual, consequential, compensatory, and punitive damages, along with reasonable attorneys' fees and costs, in an amount to be determined at trial.

## COUNT TWO: BREACH OF CONTRACT (DESMARAIS)

67.    Plaintiffs repeat and re-allege each and every allegation stated in the preceding paragraphs of the Complaint as if set forth fully herein.

68.     Throughout Desmarais' employment with TD Bank, incentive compensation plans were developed for certain bank employees including Desmarais.  In exchange for his participation in and eligibility to earn awards under the TD Wealth Management US Private Client Group Incentive Plans ("Relationship Manager Agreements"), Desmarais agreed to certain post-employment obligations including, but not limited to, restrictions on soliciting TD Bank's customers, accepting business from its customers, and using TD Bank's confidential and proprietary information.

69.     Desmarais' Relationship Managers Agreement is a valid contract supported by adequate consideration, and Plaintiffs have the authority to enforce same.

70.     Plaintiffs have performed their obligations under the Relationship Managers Agreement in that they paid Desmarais his compensation in accordance with the agreement for his employment with Plaintiffs.

71.     Desmarais breached the Relationship Managers Agreement by, upon information and belief, soliciting clients of TD Bank in an effort to obtain their business with Desmarais for RJF.

72.     In so doing, Desmarais contacted TD Bank's clients within the 12-month period of which he was prohibited to do so, with the sole purpose of inducing or causing that client, customer or account to cease doing business or to restrict, limit, reduce or modify its relationship with TD Bank or any of its subsidiaries, affiliates or divisions, or for the purpose of selling, providing or offering to any such client, customer or account any products, services, programs and/or systems offered, sold or provided by (or that compete with the products, services, programs and/or systems offered, sold or provided by) TD Bank or any of its subsidiaries, affiliates or divisions with which the Plan Participant was involved during the Look Back Period.

73.    By virtue of the foregoing, Desmarais violated the Relationship Managers Agreement.

74.    The Relationship Managers Agreement is enforceable under Connecticut law.

75.    The restrictive covenants contained in the Relationship Managers Agreement are necessary and tailored to protect TD Bank's investment in Desmarais , as well as protect TD Bank's legitimate business interests, including but not limited to goodwill, clients, and confidential and proprietary and business information.

76.    The Relationship Managers Agreement is narrowly tailored to 12 months.

77.    Upon information and belief, Desmarais' breaches of these covenants continue to this day and will continue unless he is ordered to abide by the obligations to which he agreed when he accepted the Relationship Managers Agreement.

78.    As a result of Desmarais' conduct, TD Bank has suffered, and continues to suffer, damages in the form of lost accounts and fees associated with the administration of same.

79.    As a result of Desmarais' conduct, TD Bank has been forced to expend attorneys' fees to its detriment.

80.    The harm that TD Bank will suffer, and will continue to suffer, if Desmarais is permitted to continue his employment with RJF, will result in competitive disadvantage to TD Bank in the hands of Desmarais.

81.    In addition, as a consequence of Desmarais' breaches of the Relationship Managers Agreement, TD Bank seeks actual, consequential, compensatory, and punitive damages, along with reasonable attorneys' fees and costs, in an amount to be determined at trial.

## COUNT THREE: TORTIOUS INTERFERENCE WITH CONTRACT (BARTKIEWICZ)

82.    Plaintiffs repeat and re-allege each and every allegation stated in the preceding

paragraphs of the Complaint as if set forth fully herein

83.    TD Bank maintains existing contracts with each and every customer.

84.    TD Bank maintains contracts with each and every customer which Bartkiewicz solicited.

85.    TD Bank has business expectancies for each and every customer.

86.    As an investment advisor, Bartkiewicz necessarily knew and was aware of the contracts and business expectancies that TD Bank maintained with each customer.

87.    To that end, Bartkiewicz was aware of and knew of TD Bank's fee agreement with each of TD Bank's customers with whom Bartkiewicz interacted.

88.    Knowing of TD Bank's fee agreements with its customers and clients, Bartkiewicz devised a plan and scheme to undercut TD Bank's fee agreements with its customers and clients, in order to bring TD Bank's clients to RJF, where Bartkiewicz worked.

89.    Bartkiewicz' motive was to bring the TD Bank's customers and clients to RJF for his own personal financial gain, to the detriment of TD Bank.

90.    As a result of Bartkiewicz' efforts, a number of clients did in fact leave TD Bank to bring their business to Bartkiewicz through RJF.

91.    As a result, TD Bank has lost, and will continue to lose, fees associated with those clients.

92.    These loses are likely permanent.

93.    The losses suffered by TD Bank are irreparable.

**COUNT FOUR: TORTIOUS INTERFERENCE WITH CONTRACT (DESMARAIS)**

94.    Plaintiffs repeat and re-allege each and every allegation stated in the preceding paragraphs of the Complaint as if set forth fully herein

95.    TD Bank maintains existing contracts with each and every customer.

96.    TD Bank maintains contracts with each and every customer which Desmarais solicited.

97.    TD Bank has business expectancies each and every customer.

98.    As a relationship manager, Desmarais necessarily knew and was aware of the contracts and business expectancies that TD Bank maintained with each customer.

99.    To that end, Desmarais was aware of and knew of TD Bank's fee agreement with each of TD Bank's customers with whom Desmarais interacted.

100.    Knowing of TD Bank's fee agreements with its customers and clients, Desmarais devised a plan and scheme to undercut TD Bank's fee agreements with its customers and clients, in order to bring TD Bank's clients to RJF, where Desmarais worked.

101.    Desmarais' motive was to bring the TD Bank's customers and clients to RJF for his own personal financial gain, to the detriment of TD Bank.

102.    As a result of Desmarais' efforts, a number of clients did in fact leave TD Bank to bring their business to Desmarais through RJF.

103.    As a result, TD Bank has lost, and will continue to lose, fees associated with those clients.

104.    These loses are likely permanent.

105.    The losses suffered by TD Bank are irreparable.

### COUNT FIVE: VIOLATION OF THE CONNECTICUT UNFAIR TRADE PRACTICES ACT, CONN. GEN. STAT. § 41-110a *Et Seq.* ("CUTPA") (BARTKIEWICZ)

106.    Plaintiffs repeat and re-allege each and every allegation stated in the preceding paragraphs of the Complaint as if set forth fully herein

107.    The acts and conduct of Bartkiewicz alleged above are unethical, unscrupulous,

unfair and deceptive, and constitute an unfair method of competition or trade practice in violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. 0167 42-110a, *et seq.*, ("CUTPA").

108.    In particular, Bartkiewicz' willful disregard of his obligations under the Investment Advisors Agreement is unethical and unfair.

109.    In addition, Bartkiewicz' solicitation of TD Bank's customers and clients, and use of same with a direct competitor is unethical and unfair.

110.    Further, Bartkiewicz' utilization of TD Bank's customer and client list to then resign an join a competitor is unethical and unfair.

111.    Bartkiewicz is a person within the meaning of Conn. Gen. Stat. §§ 42-110a(3) and 42-110g(a) entitled to bring an action under CUTPA.

112.    At all relevant times, Bartkiewicz was a person acting in the conduct of trade or commerce within the meaning of CUTPA, both within, and possibly outside, the State of Connecticut.

113.    The foregoing actions of Bartkiewicz are unethical, unscrupulous, and offensive to public policy, and constitute unfair and deceptive acts and practices in the conduct of trade or commerce, in violation of CUTPA.

114.    Bartkiewicz' violation of CUTPA was carried out with the purpose of competing unfairly with TD Bank.

115.    The actions of Bartkiewicz, as set forth herein, constitute a violation of CUTPA and common law.

116.    TD Bank seeks actual, consequential, compensatory, treble, and punitive damages, along with reasonable attorneys' fees and costs, in amount to be determined at trial.

## COUNT SIX: VIOLATION OF THE CONNECTICUT UNFAIR TRADE PRACTICES ACT, CONN. GEN. STAT. § 41-110a *Et Seq.* ("CUTPA") (DESMARAIS)

117.    Plaintiffs repeat and re-allege each and every allegation stated in the preceding paragraphs of the Complaint as if set forth fully herein

118.    The acts and conduct of Desmarais alleged above are unethical, unscrupulous, unfair and deceptive, and constitute an unfair method of competition or trade practice in violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. 0167 42-110a, *et seq.*, ("CUTPA").

119.    In particular, Desmarais' willful disregard of his obligations under the Investment Advisors Agreement is unethical and unfair.

120.    In addition, Desmarais' solicitation of TD Bank's customers and clients, and use of same with a direct competitor is unethical and unfair.

121.    Further, Desmarais' utilization of TD Bank's customer and client list to then resign an join a competitor is unethical and unfair.

122.    Desmarais is a person within the meaning of Conn. Gen. Stat. §§ 42-110a(3) and 42-110g(a) entitled to bring an action under CUTPA.

123.    At al relevant times, Desmarais was a person acting in the conduct of trade or commerce within the meaning of CUTPA, both within, and possibly outside, the State of Connecticut.

124.    The foregoing actions of Desmarais are unethical, unscrupulous, and offensive to public policy, and constitute unfair and deceptive acts and practices in the conduct of trade or commerce, in violation of CUTPA.

125.    Desmarais' violation of CUTPA was carried out with the purpose of competing unfairly with TD Bank.

126.    The actions of Desmarais , as set forth herein, constitute a violation of CUTPA and common law.

127.    TD Bank seeks actual, consequential, compensatory, treble, and punitive damages, along with reasonable attorneys' fees and costs, in amount to be determined at trial.

## <u>COUNT SEVEN: AIDING AND ABETTING (RJF AS TO BARTKIEWICZ)</u>

128.    Plaintiffs repeat and re-allege each and every allegation stated in the preceding paragraphs of the Complaint as if set forth fully herein

129.    RJF knew, or should have known, of Bartkiewicz' Investment Advisors Agreement.

130.    RJF knew, or should have known, of the restrictive covenant's included in Bartkiewicz' Investment Advisors Agreement.

131.    Despite knowledge of the Investment Advisors Agreement, RJF employed Bartkiewicz, knowing of the restrictive covenant, allowing, and in fact encouraging, him to violate the restrictive covenant to solicit customers/clients of TD Bank, to bring such clients to RJF.

132.    RJF was aware of its role in allowing, if not allowing, Bartkiewicz to violate his restrictive covenant with TD Bank to solicit customers/clients of TD Bank, to bring such clients to RJF.

133.    RJF knowingly and substantially assisted Bartkiewicz to bring the customers/clients of TD Bank to RJF through Bartkiewicz by permitting Bartkiewicz to undercut TD Bank's service fees and rates.

134.    Specifically, RJF allow Bartkiewicz to offer lower than customary RJF rates to TD Bank customers/clients for the sole purpose to solicit the TD Bank clients and bring their business from TD Bank to RJF.

135.    Due to RJF's conduct, Defendant has suffered, and will continue to suffer, irreparable damages.

## COUNT EIGHT: AIDING AND ABETTING (CLP AS TO BARTKIEWICZ)

136.    Plaintiffs repeat and re-allege each and every allegation stated in the preceding paragraphs of the Complaint as if set forth fully herein

137.    CLP knew, or should have known, of Bartkiewicz' Investment Advisors Agreement.

138.    CLP knew, or should have known, of the restrictive covenant's included in Bartkiewicz' Investment Advisors Agreement.

139.    Despite knowledge of the Investment Advisors Agreement, CLP employed Bartkiewicz, knowing of the restrictive covenant, allowing, and in fact encouraging, him to violate the restrictive covenant to solicit customers/clients of TD Bank, to bring such clients to CLP .

140.    CLP was aware of its role in allowing, if not allowing, Bartkiewicz to violate his restrictive covenant with TD Bank to solicit customers/clients of TD Bank, to bring such clients to RJF.

141.    CLP knowingly and substantially assisted Bartkiewicz to bring the customers/clients of TD Bank to CLP through Bartkiewicz by permitting Bartkiewicz to undercut TD Bank's service fees and rates.

142.    Specifically, RJF allow Bartkiewicz to offer lower than customary CLP rates to TD Bank customers/clients for the sole purpose to solicit the TD Bank clients and bring their business from TD Bank to CLP .

143.    Due to CLP's conduct, Defendant has suffered, and will continue to suffer, irreparable damages.

## COUNT NINE: AIDING AND ABETTING (RJF AS TO DESMARAIS)

144.     Plaintiffs repeat and re-allege each and every allegation stated in the preceding paragraphs of the Complaint as if set forth fully herein

145.     RJF knew, or should have known, of  Desmarais' Relationship Managers Agreement.

146.     RJF knew, or should have known, of the restrictive covenant's included in Desmarais' Relationship Managers Agreement.

147.     Despite knowledge of the Relationship Managers Agreement, RJF employed Desmarais, knowing of the restrictive covenant, allowing, and in fact encouraging, him to violate the restrictive covenant to solicit customers/clients of TD Bank, to bring such clients to RJF.

148.     RJF was aware of its role in allowing, if not allowing, Desmarais to violate his restrictive covenant with TD Bank to solicit customers/clients of TD Bank, to bring such clients to RJF.

149.     RJF knowingly and substantially assisted Desmarais to bring the customers/clients of TD Bank to RJF through Desmarais by permitting Desmarais to undercut TD Bank's service fees and rates.

150.     Specifically, RJF allowed Desmarais to offer lower than customary RJF rates to TD Bank customers/clients for the sole purpose to solicit the TD Bank clients and bring their business from TD Bank to RJF.

151.     Due to RJF's conduct, Defendant has suffered, and will continue to suffer, irreparable damages.

## COUNT TEN: AIDING AND ABETTING (CLP AS TO DESMARAIS)

152.     Plaintiffs repeat and re-allege each and every allegation stated in the preceding

paragraphs of the Complaint as if set forth fully herein

153.    CLP knew, or should have known, of Desmarais' Relationship Managers Agreement.

154.    CLP knew, or should have known, of the restrictive covenant's included in Desmarais' Relationship Managers Agreement.

155.    Despite knowledge of the Relationship Managers Agreement, CLP employed Desmarais, knowing of the restrictive covenant, allowing, and in fact encouraging, him to violate the restrictive covenant to solicit customers/clients of TD Bank, to bring such clients to CLP.

156.    CLP was aware of its role in allowing, if not allowing, Desmarais to violate his restrictive covenant with TD Bank to solicit customers/clients of TD Bank, to bring such clients to CLP.

157.    CLP knowingly and substantially assisted Desmarais to bring the customers/clients of TD Bank to CLP through Desmarais by permitting Desmarais to undercut TD Bank's service fees and rates.

158.    Specifically, CLP allowed Desmarais to offer lower than customary CLP rates to TD Bank customers/clients for the sole purpose to solicit the TD Bank clients and bring their business from TD Bank to CLP.

159.    Due to CLP's conduct, Defendant has suffered, and will continue to suffer, irreparable damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for the following relief:

1.    Preliminary and permanent injunctive relief enjoining Defendants, as well as any third party to which Defendants disclosed any client/customer of Plaintiffs from working providing services to same;

2.      Compensatory damages, in an amount to be determined at trial;

3.      Disgorgement of past compensation in all forms including reimbursement for travel and other purported business expenses during Defendant's period of disloyalty, in an amount to be determined at trial;

4.      Recoupment of all gains received by Defendants in connection with each client/customer from April 25, 2024 through present;

5.      Punitive damages;

6.      Double damages;

7.      Treble damages;

8.      Plaintiffs' reasonable attorneys' fees and costs;

9.      A jury trial on all claims so triable;

10.     Pre-judgment interest; and

Such other and further relief, legal and equitable, that this Court deems just and proper.

Respectfully submitted,

*/s/ Elizabeth R. McKenna*
Elizabeth R. McKenna (ct28113)
James H. Golicz (ct31155)
LITTLER MENDELSON, P.C.
265 Church Street, Suite 300
New Haven, CT  06510
Telephone: 203.974.8700
Facsimile:  203.974.8799
emckenna@littler.com
jgolicz@littler.com

*Counsel for Plaintiffs*

## **VERIFICATION**

I, Lynn Sullivan, SVP, Wealth Market President, Metro New England, am the authorized representative of TD Bank, N.A. and TD Private Client Wealth, LLC for purposes of verifying the foregoing Complaint. I have personal knowledge of the matters set forth in the Complaint or the information contained therein has been collected and made available to me by counsel and employees of TD Bank, N.A. and TD Private Client Wealth, LLC. I affirm that the factual information and statements made therein are true and correct to the best of my knowledge and belief.

_Lynn Sullivan_ (signature)
Lynn Sullivan

MASSACHUSETTS
STATE OF ~~CONNECTICUT~~          )
                                 ) ss.:
COUNTY OF Hampden                )
                    Lynn Sullivan
    Personally appeared, ~~JS~~  before me and subscribed and swore to the foregoing on this 15th day of May 2024.

_Lynn A. Santos_ (signature)
Notary Public
My Commission Expires:_____

**LYNN A. SANTOS**
**Notary Public**
**Commonwealth of Massachusetts**
**My Commission Expires**
**July 25, 2025**

27